# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **BURGESS PIGMENT COMPANY,** <br><br> *Plaintiff*, <br><br> **v.** <br><br> **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** <br><br> *Defendant*. | **CIVIL ACTION NO.** <br> **5:25-cv-00309-TES** |

## ORDER DENYING MOTION TO DISMISS

Arguing that the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 700, *et seq.*, requires courts to set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," Burgess Pigment Company ("Burgess") commenced this lawsuit for declaratory and injunctive relief. [Doc. 1, pp. 1, 17]; [Doc. 1, ¶ 66 (quoting 5 U.S.C. 706(2))]. The United States Environmental Protection Agency (the "EPA" or the "Agency") seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis that Burgess's complaint lodged nothing against it except an insufficient "formulaic recitation of the elements of a cause of action." [Doc. 16]; [Doc. 16-1, p. 11 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))].

At the Court's hearing on the EPA's motion to dismiss, the EPA agreed to maintain the status quo of the global issue in this case until its resolution. The Court

gladly relies on the EPA's counsel and sees no need for a formal injunction. Her word is enough.

When ruling on a motion pursuant to Rule 12(b)(6), the well-pled factual allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). Moreover, Rule 12(b)(6) must be read in conjunction with the pleading rules set forth in Rule 8, which requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And, in ruling on a motion to dismiss, district courts may consider any undisputed documents referenced in a complaint that are central to the allegations asserted. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) (per curiam); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Burgess opens its complaint with a brief primer about how the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601, *et seq.*, originally passed in 1976, gives the EPA the authority to collect information on the manufacturing and processing of chemical substances to gauge their "risk of injury to" and their "effect . . . on" our health and the environment. 15 U.S.C. § 2601(a)(2) & (b)(1); [Doc. 1, ¶¶ 1–2, 28]. The Court finds it wise to take the same tack. Admittedly, wading through the related statutes and regulations is a tough slog, but doing so is necessary for any sort of understanding of the dense material for this case.

**A.**      <u>**Statutory and Regulatory Background**</u>

In passing the TSCA, Congress decided that the "development of such information should be the responsibility of those who manufacture and . . . process such chemical substances and mixtures." 15 U.S.C. § 2601(b)(1). Using the collected information, the TSCA requires the EPA to "compile, keep current, and publish a list"—an "Inventory"—of each chemical substance manufactured or processed in the United States or imported to it. *Id.* at § 2607(b)(1); 40 C.F.R. pt. 710(a); [Doc. 1, ¶ 3]; [Doc. 16-1, p. 4]. The TSCA Inventory is one of two mechanisms relevant to the regulation of the manufacture, processing, and distribution of those chemical substances and mixtures that may be environmentally harmful. [Doc. 1, ¶ 28]. Publication of various chemicals and chemical mixtures, though, can have a significant impact on the competitive market for businesses who are required by law to report their use to the EPA. *See* [*id.* at ¶¶ 8, 10, 23]. Thus, to implement the TSCA Inventory in a manner that both protects competition and satisfies the congressional purpose in passing the TSCA, manufacturers or processors may claim information submitted to the EPA as confidential business information ("CBI"). [*Id.* at ¶ 29]; [Doc. 16-1, p. 4 n.1]. This creates the two sides or "portions" of the TSCA Inventory. *See* [Doc. 1, ¶ 29]. It has a "confidential" portion (accessible only to the EPA) that includes the specific chemical identities of a substance—like its chemical structure, composition, manufacturing process, and raw materials—and a "nonconfidential" portion (available to the public via

the EPA's website). 15 U.S.C. §§ 2607(b)(4)(B)(i), 2613(a) & (c); [Doc. 1, ¶¶ 4–6, 30–31]. The EPA keeps track of confidential chemical substances with random and unique—but nonconfidential—five- or six-digit identifiers known as accession numbers. [Doc. 1, ¶ 30]; [Doc. 16-1, p. 4].

Those seeking to protect a chemical substance from disclosure and have it earmarked as CBI must submit "a claim for protection . . . in accordance with such rules . . . as the [EPA] has promulgated or may promulgate." 15 U.S.C. § 2613(c)(1)(A); [Doc. 1, ¶¶ 7, 32–33, 38]. When making a CBI claim, submitting entities must include four things in a statement to the EPA. 15 U.S.C. § 2613(c)(1)(B)(i)–(iv); [Doc. 1, ¶ 38]. First, they must state that reasonable measures have been taken to protect the confidentiality of the information. 15 U.S.C. § 2613(c)(1)(B)(i); [Doc. 1, ¶ 38]. Second, they must confirm that some other federal law does not require the information to be disclosed or made public. 15 U.S.C. § 2613(c)(1)(B)(ii); [Doc. 1, ¶ 38]. Third, they must explain how there's a reasonable basis to conclude that disclosure of the information is likely to cause substantial harm to a competitive edge in the market. 15 U.S.C. § 2613(c)(1)(B)(iii); [Doc 1, ¶ 38]. And fourth, manufacturers or processors must state that they have a reasonable basis to believe that the information is not readily discoverable through reverse engineering. 15 U.S.C. § 2613(c)(1)(B)(iv); [Doc 1, ¶ 38].

Subject to any request from the EPA to further substantiate how a chemical substance qualifies for a CBI exemption, if these "precursors" (for lack of a better word)

are met and a valid CBI claim has been submitted to the EPA, then the TSCA requires the EPA to review and either approve, approve in part and deny in part, or deny confidentiality claims within 90 days of their assertion. 15 U.S.C. § 2613(g)(1)(A); [Doc. 1, ¶¶ 35, 39]. The TSCA requires the EPA to protect specific chemical identities from disclosure when a valid CBI claim has been asserted. 15 U.S.C. § 2613(a); 40 C.F.R. § 703.7(f); [Doc. 1, ¶¶ 34, 40]. Further, if no other law denies confidential protection and the information falls within a specific exemption from the Freedom of Information Act, 5 U.S.C. § 552(b)(4), then the EPA must keep the chemical-substance information confidential so long as a manufacturer or processor "has taken reasonable measures to protect the confidentiality of the information"—information that is not reasonably obtainable by other legitimate means and for which there is a "reasonable basis that disclosure of the information is likely to cause substantial harm" to the business's competitive position. 40 C.F.R. § 703.7(f)(1)–(6); [Doc. 1 ¶ 40]. Information entitled to protection from disclosure has to be kept confidential for 10 years (starting on the date the submitting entity asserts a CBI claim). 15 U.S.C. § 2613(e)(1)(B)(i); [Doc. 1, ¶ 41].

In 2016, Congress amended the TSCA via the 2016 Frank R. Lautenberg Chemical Safety for the 21st Century Act ("Lautenberg Act"). [Doc. 1, ¶¶ 13, 36]. Under the amendments, Congress forced the EPA to promulgate a rule by June 22, 2017, aimed at getting an up-to-date list of each chemical substance on the TSCA Inventory. 15 U.S.C. § 2607(b)(4)(A)(i). Initially proposed by the EPA on January 3, 2017, the EPA purported to

accomplish the amendments' goals by making effective a "retrospective electronic notification" system for certain chemical substances on the TSCA Inventory that were manufactured during a 10-year "lookback period" ending on June 21, 2016. TSCA Inventory Notification (Active/Inactive) Requirements, 82 Fed. Reg. 37520 (proposed Jan. 3, 2017) (codified at 40 C.F.R. § 710); [Doc. 1, ¶ 37]. This "Active/Inactive Rule" became effective on August 11, 2017, and while the amendments gave the EPA discretion to include processors in its then-forthcoming rule, the amendments mandated the EPA to *require* manufacturers to notify it of each chemical substance listed on the TSCA Inventory that they had manufactured during the lookback period—the period from 2006 to 2016. 15 U.S.C. § 2607(b)(4)(A)(i); 82 Fed. Reg. 37520–21, 37523; [Doc. 1, ¶ 13]; [Doc. 16-1, p. 5].

According to the EPA, though, it ended up requiring "any manufacturer *or processor* of a confidential chemical substance" to submit a notice—on a Notice of Activity Form A ("NAA Form")—that it "intended to maintain a confidentiality claim for the substance's specific identity" by setting out specific reporting requirements to substantiate a CBI claim. 82 Fed. Reg. 37542–43; [Doc. 1, ¶¶ 18, 37]; [Doc. 16-1, p. 5 (citing 15 U.S.C. § 2607(b)(4)(A)(i) (emphasis added)]. If the EPA received an NAA Form for a particular chemical substance, then the amendments required that the EPA "shall designate" that substance as "Active." 15 U.S.C. § 2607(b)(4)(A)(ii); [Doc. 1, ¶ 14]. If, on the other hand, no NAA Form was received for a particular chemical substance,

6

then the EPA is statutorily required to designate that substance as "Inactive." 15 U.S.C. § 2607(b)(4)(A)(iii); [Doc. 1, ¶ 15]; [Doc. 16-1, p. 5]. The submission period for manufacturers ran from August 11, 2017, through February 7, 2018. 82 Fed. Reg. 37543.

When the EPA reviews an NAA Form and decides that the information provided is insufficient to maintain confidentiality of a chemical substance, it must notify the filer that it intends to disclose its identity or "not protect the information from disclosure." 15 U.S.C. § 2613(g)(2)(A); [Doc. 16-1, p. 5 (citing 15 U.S.C. § 2613(g)(2)(A))]. The EPA, however, cannot disclose confidential information until 30 days after the filer "receives" the EPA's notification of intent to disclose. 15 U.S.C. § 2613(g)(2)(B); [Doc. 16-1, p. 5 (citing 15 U.S.C. § 2613(g)(2)(B))]. If a filer "believes the information is protected from disclosure under this section," the filer "may bring an action to restrain disclosure" of the confidential information, but any action must predate "the date on which the information is to be disclosed." 15 U.S.C. § 2613(g)(2)(D)(i); [Doc. 16-1, p. 5 (citing 15 U.S.C. § 2613(g)(2)(D)(i))].

In addition to a commercial-purpose exemption discussed by the EPA, Burgess alleges that when the EPA promulgated the Active/Inactive Rule, it also "created an exemption to the notice requirement for any chemical substances reported to [it] under either the 2012 or the 2016 Chemical Data Reporting rules." [Doc. 1, ¶ 18 (citing 82 Fed. Reg. 37520, 37529–30)]; [Doc. 16-1, p. 6 (citing 82 Fed. Reg. 37523–24)]. The EPA argues that the TSCA also authorizes the collection of "information on the production and use

7

of chemicals in commerce" through the other regulatory mechanism relevant to Burgess's APA claim—the TSCA Chemical Data Reporting ("CDR") Rule. 15 U.S.C. § 2607(a); [Doc. 16-1, p. 6].

Given that it's quite lengthy and convoluted, the EPA simply summarizes the CDR Rule as a requirement for manufacturers that produce a certain chemical "over certain volume thresholds . . . to provide certain exposure-related information to [the] EPA." 40 C.F.R. §§ 711.1–711.20; [Doc. 16-1, p. 6 (citing 40 C.F.R. § 711.15)]. Further, according to the EPA, a manufacturer may also assert a CBI claim to protect chemical identity through its CDR so long as the reported chemical substance is already on the confidential portion of the TSCA Inventory and the four requirements for CBI status discussed above have been substantiated. [Doc. 16-1, pp. 6–7 (first citing 40 C.F.R. § 711.15; and then citing 15 U.S.C. § 2613(c)(1)(B)(i)–(iv) and 40 C.F.R. § 711.30(b))]. The Active/Inactive Rule only requires one submission of an NAA, but the CDR Rule operates under "recurring submission periods" requiring reporting on a quadrennial basis—"from June 1 to September 30" every four years. 40 C.F.R. § 711.20; [Doc. 16-1, p. 6 (citing 40 C.F.R. § 711.20)].

Under the Active/Inactive Rule, "[a] CDR notice from 2012 or 2016 provides equivalent notice to [the] EPA that the substance was manufactured during the lookback period," and chemical substances included on a CDR notice will be designated as active by operation of [the Active/Inactive Rule]" since a CDR notice "would denote

that the chemical was 'active' in [United States] commerce." 82 Fed. Reg. 37523; [Doc. 16-1, p. 7]. The EPA phrases it like this: "Because of the [overlapping] nature of the quadrennial CDR Rule and the one-time Active/Inactive Rule, the need to submit an NAA when a 2016 CDR [notice] had previously been filed depended on whether the submitter wanted to maintain a specific confidentiality claim for a specific chemical identity." [Doc. 16-1, p. 7]. So, if you filed a CDR notice in either 2012 or 2016, then you're exempt from the Active/Inactive Rule's retrospective notification requirements. 82 Fed. Reg. 37523; [Doc. 1, ¶ 18]. However, as Burgess notes in its complaint, those who manufactured or processed a chemical substance added to the confidential portion of the TSCA Inventory prior to June 22, 2016, should recognize that the Active/Inactive Rule required it to nonetheless submit an NAA Form to the EPA if they wanted to keep the identity of a particular substance confidential. 82 Fed. Reg. 37524; [Doc. 1, ¶ 19]. This, Burgess did not do by February 7, 2018—the deadline set by the Active/Inactive Rule. 82 Fed. Reg. 37543; [Doc. 1, ¶ 20].

### B.    Burgess's Confidential Discovery and History

Okay, now that we know what the parties pinpoint as the relevant statutory and regulatory provisions for Burgess' APA claim, what is Burgess and why all the fuss about its chemicals? Burgess is a small company out of Sandersville, Georgia, that "produces specialized kaolins for servicing specialty coatings, plastics, rubber, and cementitious markets." [Doc. 1, ¶¶ 9, 24].

In the 1940s, Malcom S. Burgess found a beneficial use for what was, at the time, thought to be an "unusable" waste product of kaolin crudes. [*Id.* at ¶ 43]. No company has ever discovered how to use kaolin crudes to create useful products in the same manner as Mr. Burgess. [*Id.*]. Chartering Burgess in 1948, the confidentiality of his discovery allowed his company to set itself and its products apart "from all others" for well over half a century. [*Id.* at ¶¶ 43, 45]. For 77 years, Burgess has kept the chemicals it uses in its operations confidential to ensure its competitive edge. [*Id.* at ¶ 11]. Tying it all together, Burgess must report these secret chemicals to the EPA. [*Id.* at ¶ 10]. Since Burgess first started reporting information to the EPA in compliance with the TSCA, and for the next 20 years, from 2000 to 2020, Burgess claimed, and the EPA approved, confidential protection for the identities of its chemical substances. [*Id.* at ¶ 12].

This confidential discovery, which represents the core of Burgess's business, is what the EPA intends to make public because Burgess didn't timely submit an NAA Form as required by the Active/Inactive Rule. [*Id.* at ¶¶ 20, 44]. Burgess claims that publication of its long-kept secret to the nonconfidential portion of the TSCA Inventory "threatens [its] very existence." [*Id.* at ¶ 44]. Should the EPA disclose the chemicals Burgess uses in its operations, the Agency will not only "be providing Burgess's competitors with information they have not otherwise been able to obtain over the last 75 years," but any disclosure "threaten[s] Burgess's ability to survive for the *next* 75 years." [Doc. 1-7, p. 7].

According to Burgess's complaint, the EPA "has never found any reason that Burgess's CBI is subject to disclosure other than [Burgess's] failure to submit notice and a CBI request pursuant to the . . . Active/Inactive Rule." [Doc. 1, ¶ 89]. Burgess also alleges that the EPA even recognizes that "disclosure of CBI as a result of the mistaken failure to submit a request for CBI under the . . . Active/Inactive Rule could irreparably harm companies." [*Id.* at ¶ 90]. If that's true, as the Court expounds on below, then it very well might be that the EPA's refusal to withdraw its denial of the CBI claim concerning the identity of the chemical substance for Accession Number XXX88 calls for judicial intervention via the APA.

### C.    **Burgess's CBI Timeline**

On October 5, 2000, the EPA first approved Burgess's request for confidential treatment for its chemical substance and assigned the substance its accession number as well as a "generic name" for later ease of reference. 82 Fed. Reg. 37542; [Doc. 1, ¶¶ 30, 46]. For the next 20 years, Burgess "continued to carefully safeguard the [substance] as CBI, renewed its requests to [the] EPA that the [substance] be treated as CBI in each of the company's [CDR] submissions, and repeatedly substantiated the reasons why the information qualifies for protection under [the] EPA's regulations." [Doc. 1, ¶ 47].

If you recall the recurring submission periods for CDR notices, the normal submission window is "from June 1 to September 30" every four years. 40 C.F.R. § 711.20. But, on September 26, 2016, the EPA extended the deadline for 2016 CDR notices

to October 31, 2016. 81 Fed. Reg. 65924–25. Burgess filed its CDR notice on time, and in it, "Burgess made the same CBI claim it had made since 2000 for its highly confidential chemical information." [Doc. 1, ¶ 48]. In response to Burgess's 2016 CDR notice, the EPA informed Burgess on April 6, 2020, that it had "[c]onsequently" found that "the specific chemical identities" for which Burgess claims confidentiality "are not entitled to confidential treatment." [*Id.* at ¶ 50]; [Doc. 1-5, pp. 2–3]. So, nearly *four years* after Burgess submitted its 2016 CDR notice on October 31, 2016, the EPA told Burgess that it "intends to disclose" the specific chemical identities of Burgess's confidential substance "on the public portion of the TSCA Inventory," effectively destroying Burgess as a commercial entity. [Doc. 1, ¶¶ 48, 50–51]; [Doc. 1-5, p. 2]. According to Burgess's complaint, nowhere in the EPA's letter from April 6, 2020, does the EPA "explicitly rely on Burgess's failure to timely submit" its CBI notice under the Active/Inactive Rule. [Doc. 1, ¶ 54]. Nevertheless, to preserve the confidentiality of its chemical substance, Burgess did what it hoped would be enough to rid the EPA of its intent to disclose 77 years' worth of confidentiality for Mr. Burgess's discovery about kaolin crudes. [*Id.* at ¶¶ 21, 43, 45, 55].

Before detailing each of Burgess's efforts on that front, the Court pauses to toss in a few details from the EPA's letter dated April 6, 2020. *See generally* [Doc. 1-5]. As Burgess alleged, the EPA stated that "[t]his letter concerns [Burgess's] CDR submission" from 2016 "which asserted a confidentiality claim for the specific chemical identities of

one or more chemical substances reported pursuant to the [CDR] Rule . . . ." [*Id.* at p. 2]. According to this letter, the EPA had learned that "another entity is no longer treating the specific chemical identity of these chemical substances on the TSCA Inventory as confidential," so the EPA deemed them "reasonably obtainable by the general public." [Doc. 1, ¶ 53]; [Doc. 1-5, pp. 2–3]. In dropping quite the bombshell on Burgess, the EPA did remind Burgess that it had 30 calendar days from the receipt of its letter from April 6, 2020, to commence an action in federal court as permitted by the TSCA. [Doc. 1-5, p. 3 (citing 15 U.S.C. § 2613(g)(2)(D)(i))]. Suit in "the United States district court of the district in which the complainant resides or has the principal place of business" must be brought "*before* the date on which the information is to be disclosed." 15 U.S.C. § 2613(g)(2)(D)(i)(I) (emphasis added). "At the end of those 30 days," however, the EPA informed Burgess that it "intends to make available to the public any information found not entitled to confidential treatment and for which [it did] not [seek] judicial review." [Doc. 1-5, p. 3].

In denying—four years after the fact—Burgess's 2016 CDR notice, the EPA gave three reasons. [*Id.* at p. 4]. First, it said, "There were inconsistent CBI claims made in CDR filings and at least one entity did not claim the chemical identity as CBI[.]" [*Id.*]. Second, it said, "Not a single entity submitted a[n] [NAA Form] reasserting a chemical identity CBI claim when the chemical was listed as CBI . . . for the TSCA Inventory['s]" Active/Inactive Rule. [*Id.*]. And third, it said, "One or more entities [made]

13

submissions[s] on a particular chemical identity and at least one entity *did not* claim the chemical identity as CBI." [*Id.* (emphasis added)].

Now, turning back to Burgess's efforts to reign in the EPA's intent to disclose Burgess's chemical substances, Burgess claims that it first documented how the EPA's "provided rationale for its decision to make public Burgess's CBI was factually inaccurate." [Doc. 1, ¶¶ 21, 55–56]. According to Burgess, "[n]o other entity," *other than Burgess*, "had submitted a 2016 CDR [notice] to [the] EPA for the chemical substance at issue." [*Id.* at ¶¶ 48, 56]. "As such, no other entity," consistent with what the EPA stated in its letter, "was treating the specific chemical identity as non-confidential." [*Id.* at ¶ 56]. Second, Burgess says that it "took corrective action to address [its] failure to submit [an NAA Form] under the . . . Active/Inactive Rule and filed the required forms on September 4, 2020, along with a CBI claim and associated substantiation." [*Id.* at ¶ 57]. Third, "as soon as the reporting period" for the CDR Rule opened in September 2020, Burgess points to how quickly it acted in filing its 2020 CDR notice along with "a complete CBI claim and associated substantiation for the chemical substance." [*Id.* at ¶ 58]. And fourth, Burgess notes how it continued communications with the EPA "regarding its inadvertent oversight of the reporting required by the Active/Inactive Rule" by explaining just how important it was that its chemical substance remain confidential and how detrimental it would be to the company if it were to be made public. [*Id.* at ¶ 59]. Not to put too fine a point on it, but Burgess, again, claims that the

14

EPA's intent to make its CBI public "threatens the very existence of [the] company" and its ability to "distinguish itself and its products . . . from all" other companies. [Doc. 1-6, p. 2].

### 1.    Burgess's Email to the EPA

In one such communication, Burgess responded to an email from the EPA on August 13, 2020. [Doc. 1-6, p. 1]. In its email, Burgess recounted how the EPA sent it an electronic copy of the Agency's letter "originally dated April 6, 2020," nearly four months later on August 3, 2020. [Doc. 1, ¶ 50]; [Doc. 1-6, p. 2]. Then, going off the date that it received the electronic copy—August 3, 2020—Burgess confirmed its understanding that the 30-day window to "bring an action to restrain disclosure of the information" would end on September 2, 2020. [Doc. 1-6, p. 2]; [Doc. 1-7, p. 3 n.1 (citing 40 C.F.R. § 2.205(f)(2) ("The notice prescribed by paragraph (f)(1) of this section shall be written, and shall be furnished by certified mail (return receipt requested), by personal delivery, or by other means which allows verification of the fact of receipt and the date of receipt."))]. Burgess, though, in requesting a 15-day extension, wrote:

> Since [the] EPA first informed Burgess . . . of its intent to publicly post this [CBI], we have engaged with [the] EPA several times as we try and understand the factual and legal basis for [the] EPA's position as stated in the letter. . . . Understanding the importance of this [CBI] to Burgess['s] . . . future and without abandoning our request that [the] EPA treat the information as confidential[,] . . . Burgess . . . requests [the] EPA agree that it will not take action to make Burgess['s] . . . [CBI] available to the public prior to September 18, 2020.

[Doc. 1-6, pp. 2–3].

### 2. Burgess's Letter to the EPA Dated February 12, 2021

In another communication—this time from Burgess's lawyers on Burgess's behalf, Burgess sent the EPA a letter dated February 12, 2021. [Doc. 1-7, p. 1]. Burgess extended its appreciation to the EPA for its willingness "to provide additional time to resolve this matter without the need for judicial intervention." [*Id.* at p. 2]. "In an effort to reach an appropriate resolution" without litigation, however, Burgess sought to document "why the [A]gency's denial of Burgess's 2016 [CDR] [notice] to maintain confidential protection of two specific chemical identities is not supported by the available factual information and how revealing the long-protected identities of these substances would be inconsistent with the applicable statutory and regulatory provisions." [*Id.*]. If you need a break, now would be a good time to take one because the letter from Burgess's lawyer that the Court is about to discuss is eight pages long . . . single-spaced. More importantly, it's the crux of Burgess's allegations for its APA claim.

The preliminaries of the letter detail much of what we already know: the EPA's 20-year protection of Burgess's chemical substances leading up to the EPA's email to Burgess from August 3, 2020. [*Id.* at pp. 2–3]. If you recall, the EPA's letter to Burgess is dated April 6, 2020, but for some reason, Burgess didn't receive the electronic copy of it until August 3, 2020. [Doc. 1-6, p. 2]; [Doc. 1-7, p. 3 n.1]. That date, August 3, 2020, was the first time Burgess learned of the Agency's intent to "make the two specific chemical identities that Burgess claimed as confidential in its 2016 CDR [notice] available to the

16

public." [Doc. 1-7, p. 3].

Burgess's letter in response summarizes how the EPA "concluded that another entity had filed 2016 CDR [notices] for the exact same two specific chemical substances that Burgess had claimed as confidential in *its* 2016 CDR [notice] – except that other entity had allegedly not claimed the specific chemical identities as confidential." [*Id.* at pp. 3–4 (emphasis added)]. "As a result," Burgess noted the EPA's determination that "the specific chemical identities were 'reasonably obtainable' by the public." [*Id.* at p. 4]. From the EPA's standpoint, "the specific chemical identities were 'clearly not entitled' to confidential treatment." [Doc. 1-5, p. 3]; [Doc. 1-7, p. 4]. Then, Burgess wrote that the "EPA's stated justification for its determination . . . relies on 'facts' that are verifiably false." [Doc. 1-7, p. 4].

> Upon receiving [the Agency's letter dated April 6, 2020], Burgess and undersigned counsel searched the 2016 CDR Rule [d]atabase for [notices] filed that listed either of the specific chemical identities that Burgess had claimed [as] confidential and those searched *failed to return any such reports*. There are <u>no</u> 2016 CDR Rule [notices] included in [the] EPA's public 2016 CDR Rule [d]atabase that identify either of the two chemical identities that are the subject of [the] EPA's determination. In fact, Burgess is the <u>only entity</u> to file a 2016 CDR [notice] related to Accession Number XXX88.

[*Id.*]. From there, Burgess continues its letter by noting that it "did identify a second entity . . . that filed a 2016 CDR [notice] related to Accession Number XXX71." [*Id.*]. However, Burgess informed the EPA that "[t]here is no evidence that [the second entity's notice] listed the actual specific chemical identities." [*Id.*]. "Instead, the publicly available information appears to indicate that [the second entity's notice] listed the

17

[generic] name associated with Accession Number XXX71." [*Id.*]. Just for ease of reference, let's call that second entity "Company B."

Now, read this part carefully. Burgess says that the 2016 CDR Rule database lists Company B's CDR notice under Accession Number XXX71 and under the generic name the EPA assigned to that accession number *"but not under either of Burgess's specific chemical identities."* [*Id.* at pp. 4–5]. As a cautionary measure, Burgess requested that the EPA "provide the information the [A]gency relied on when making its determination that the specific chemical identities were 'clearly not entitled' to confidential treatment." [*Id.* at p. 5]. In its request from August 27, 2020, Burgess specifically sought "information regarding the entity that is no longer treating the specific chemical identities at issue as confidential and a copy of the filing, submission, or other communication wherein the entity waived its CBI claim." [*Id.*]. The EPA's response dated September 9, 2020, though, "failed to provide any evidence regarding Accession Number XXX88 . . . ." [*Id.*]. According to Burgess, this apparent inability to supply the sought-after information "confirm[ed] that no other entities filed a 2016 CDR [notice] under [Accession Number XXX88]." [*Id.*].

Then, regarding Accession Number XXX71, Burgess tells the EPA that "the only evidence [the] EPA provided was a link to the information [Company B] reported under the 2016 CDR Rule." [*Id.*]. The information provided, however, lists the chemical identity as "[a]luminum silicate clay treated with organosilane (amino functionality)

18

(PROVISIONAL)." [*Id.*]. Burgess states, however, that *that* chemical identity is "the public provisional name [the] EPA assigned to Accession Number XXX71 and that Burgess's own 2016 CDR [notice] makes publicly available – *but it is not the specific chemical identity that Burgess claimed as confidential in that [notice].*" [*Id.*]. "The fact that [Company B's] report does not assert a claim of confidentiality for the public provisional name assigned to Accession Number XXX71 does not," according to Burgess, "reveal the specific chemical identity of the chemical Burgess uses and has claimed as confidential." [*Id.*]. So, what does all that mean? Well, Burgess puts it like this: Company B's CDR notice "has no bearing on Burgess's request for confidential protection of the two specific chemical identities." [*Id.*].

Based on what Burgess pushes as "easily verifiable" facts, it says, contrary to the EPA's stated position, that "no other entity filed a 2016 CDR [notice] that identified either of the two specific chemical identities that are the subject of Burgess's confidentiality claims." [*Id.*]. Put simply, given that the EPA's sole justification for determining that Burgess's "specific chemical identities were 'clearly not entitled' to confidential protection *depends entirely* on the allegation that there was *another entity* who had not only filed 2016 CDR [notices] for these two specific chemical identities but . . . had [also] not claimed those specific chemical identities as confidential," Burgess is of the position that "the EPA's determination must be reversed." [*Id.* (emphasis added)]. By way of an example to support this position, Burgess points out that although the

EPA's "justification includes the allegations that the confidentiality of the specific chemical identities were no longer being protected and that their identities were obtainable by the public," if there weren't any notices identifying the specific chemical identities in the 2016 CDR Rule database, then there's "no basis in the record" to support the EPA's reasoning. [*Id.*]. "Without a factual basis for the justification [that the] EPA provided in its letter," Burgess claims that the "EPA's determination would be viewed as arbitrary and capricious if reviewed by a court." [Doc. 1, ¶¶ 66, 75. 91–92].

"Finally," with respect to the EPA's letter dated April 6, 2020, Burgess concludes that the Agency's "regulations do not provide" a way for the EPA to supplement its provided justification "with additional information" or offer any avenue by which the EPA could "rely on a wholly new substitute justification." [Doc. 1-7, p. 5]. Since 40 C.F.R. § 2.205(f)(2) mandates that the EPA "shall state the basis for [its] determination," Burgess suggests that "[a]ny additional basis [the] EPA might seek to add or substitute now would not have been stated" in the letter from April 6, 2020, "as required." [*Id.* at pp. 5–6]. Thus, "any attempt to take such an action now would create an additional ground for a reviewing court to conclude that [the] EPA's determination was arbitrary and capricious or otherwise not in accordance with law." [*Id.* at p. 6]. To explain its reasoning for this position, Burgess says that the EPA's letter dated April 6, 2020, "did not rely on statutory provisions adopted as part of the [Lautenberg Act], such as 15 U.S.C. § 2607(b), or [the] EPA's regulations implementing [it]." [*Id.*]. "Even if those

20

provisions could be offered as a new justification at this stage," Burgess says, "they would not support [the] EPA's determination that the specific chemical identities are not entitled to confidential treatment." [*Id.*].

Burgess reminded the EPA that on September 4, 2020, Burgess submitted two NAA Forms each covering the specific chemical identities represented by Accession Number XXX88 and Accession Number XXX71. [Doc. 1, ¶ 57]; [Doc. 1-7, p. 6]. Those two NAA Forms, according to Burgess, clearly indicated its request "to maintain an existing claim of confidentiality and included four pages substantiating the basis for the confidentiality claims." [Doc. 1-7, p. 6]. When Burgess submitted those NAA Forms, it states that "the two specific chemical identities were on the confidential portion of the TSCA Inventory[,] and the claims for confidential treatment were not prohibited by any portion of the Lautenberg Act." [*Id.*]. Most importantly, Burgess stresses, its claims for confidential treatment weren't prohibited by 15 U.S.C. § 2607(b)(8)—prohibiting new claims for confidential treatment for substances *not* already on the confidential portion of the TSCA Inventory. [*Id.*]. "Per the statute," Burgess tells the EPA that "because [the] EPA received the [two NAA Forms] while the specific chemical identities were on the confidential side of the [TSCA] Inventory, the confidential protection for the specific chemical identities must be maintained at least until [the] EPA reviews Burgess's substantiation as part of the [A]gency's larger TSCA CBI review plan." [*Id.* (citing 15 U.S.C. § 2607(b)(4)(C))].

"Even if," Burgess continues, the EPA rejected Burgess's NAA Forms for some reason or if Burgess had never submitted them, Burgess says that "the Lautenberg Act would not prohibit Burgess's confidentiality claim." [*Id.*]. Pulling from 15 U.S.C. § 2607(b)(4)'s text, Burgess says that the EPA "is obligated to 'move any *active* chemical substance for which no request was received to maintain an existing [confidentiality] claim . . . from the confidential portion of the [TSCA Inventory] . . . to the nonconfidential portion . . . .'" [*Id.* (quoting 15 U.S.C. § 2607(b)(4))]. That obligation, though, according to Burgess, "is limited on its face to active chemicals" for which the EPA received NAA Forms that made no request for confidential treatment. [*Id.*]. "If Burgess's NAA Form[s] [are] accepted by [the] EPA," Burgess claims that 15 U.S.C. § 2607(b)(4) "is not triggered because Burgess *did* include a request for confidential treatment." [*Id.* (emphasis added)]. "[I]f," however, "Burgess's NAA Form[s] [are] rejected by [the] EPA," then Burgess claims that 15 U.S.C. § 2607(b)(4) still isn't "triggered because [the] EPA would have received no [NAA Forms] . . . for the specific chemical identities and, therefore, they would be considered inactive substances under 15 [U.S.C.] § 2607(b)(4)." [*Id.*].

In closing its letter dated February 12, 2021, Burgess tells the EPA that "[t]he information detailed above is sufficient for [the] EPA to reconsider and reverse its initial determination regarding the confidential protection of Burgess's two specific chemical identities." [*Id.* at p. 7]. Not only is "the authority for [the] EPA to do so . . . clear" from

22

case law, but it's also clear from relevant Executive Orders issued by then-President Joseph Biden aimed at helping American business, like Burgess, "compete in strategic industries." [*Id.* (first citing Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers, January 25, 2021 (requiring the government to take certain actions to "help American businesses compete in strategic industries and help America's workers thrive"); and then citing Executive Order 13990, Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis, January 20, 2021 (directing agencies to review "all existing . . . agency actions" taken since January 20, 2017, and to consider revising or rescinding any actions that are inconsistent with the Nation's "abiding commitment to empower our workers and communities; promote and protect our public health and the environment; and conserve our national treasures and monuments")]. With respect to the relevant case law and Biden's Executive Orders, Burgess notes how from 1945 and for more than 70 years it has "withstood intense competition from overseas and from multinational corporations in the [United States] because [its chemical substances] have been held strictly confidential." [*Id.*].

### 3.    The EPA's Letter to Burgess Dated January 26, 2022

In response to Burgess's request that the EPA "reconsider and reverse its determinations" as to Accession Number XXX71 and Accession Number XXX88's disentitlement to confidential treatment, the EPA, on January 26, 2022, stated that it

"has reconsidered its April 6, 2020, confidentiality determinations" and "withdraws the denial of the CBI claim concerning the identity of the chemical substance [for Accession Number] XXX71." [Doc. 1-8, p. 1]. The EPA, however, doubled down on its "denial of the CBI claim concerning the identity of chemical substance [for Accession Number] XXX88." [*Id.*].

The EPA reiterated what it had already told Burgess: that "[t]he CBI claim for the identity of chemical substance [for Accession Number] XXX88 in Burgess's 2016 CDR [notice] was also denied in the April 6, 2020, determination because [the] EPA concluded that the specific identity of the chemical substance was no longer being treated as confidential." [*Id.* at p. 3]; *see also* [Doc. 1-5, pp. 2–3]. "To clarify," the EPA told Burgess that it denied CBI status to Accession Number XXX88 "because no entity filed an NAA [Form] for this active chemical substance as was required to maintain its confidentiality in accordance with 40 C.F.R. § 710.37(a) and [15 U.S.C. § 2607(b)(4)(B)]." [Doc. 1-8, p. 3]. Further, the EPA acknowledged that Burgess "attempted to submit" an NAA Form for the chemical substance bearing Accession Number XXX88 on September 4, 2020, but that submission was made after the reporting deadline and "not made in the form or manner specified by 40 C.F.R. §§ 710.29(a) [and] 710.39(a)." [Doc. 1, ¶ 57]; [Doc. 1-8, p. 3]. As discussed above, the deadline set by the Active/Inactive Rule for manufacturers to submit an NAA Form was February 7, 2018, and the deadline for processors to do so was October 5, 2018. 82 Fed. Reg. 37543.

24

"Because the specific chemical identity [for Accession Number XXX88] is no longer eligible for confidential treatment on the TSCA Inventory due to the failure to timely file an NAA [Form] to maintain the existing CBI claim," the EPA told Burgess that "the information in [its] 2016 CDR [notice] is no longer entitled to confidential treatment pursuant to [15 U.S.C. § 2613]." [Doc. 1-8, p. 3]. This reconsideration affirmed the EPA's final determination, under 40 C.F.R. § 2.204(d)(2), of the CBI claim in Burgess's 2016 CDR notice for the identity of the chemical substance for Accession Number XXX88. [*Id.* at p. 1]. The EPA then proceeded to remind Burgess—with respect to the chemical substance for Accession Number XXX88—that Burgess had 30 calendar days "to commence an action in federal court under [15 U.S.C. § 2613(g)(2)(D)(i)] to obtain judicial review of any adverse determination and to restrain disclosure of information found not entitled to confidential treatment." [*Id.* at p. 4]. The clock on those 30 days would commence "from [Burgess's] receipt of" what the EPA deemed "the final EPA determination" reflected in the EPA's letter dated January 26, 2022, sent via email, to Burgess. [*Id.*]. "At the end of those 30 days," the EPA stated that it "intends to make available to the public any information found not entitled to confidential treatment and for which [Burgess] has not sought judicial review." [*Id.*].

### 4.     The EPA's Letter to Burgess Dated September 15, 2023

Now, despite what the EPA said was its "final . . . determination" for the identity of the chemical substance for Accession Number XXX88—it appears that wasn't the

case. On September 15, 2023, the EPA set more correspondence to Burgess—this time regarding Burgess's NAA Forms and CDR notice from 2020. [Doc. 1, ¶¶ 57–58, 60]; [Doc. 1-9, p. 2]. In this letter, recycling the same the reasons from its previous communications, the EPA stated that *that letter* "constitutes the [EPA's] final confidentiality determination" on the CBI Burgess hopes to protect from disclosure. [Doc. 1-9, p. 2]. In short, the identity of the chemical substance for Accession Number XXX71 "is protected from disclosure" and "will not be made publicly available," but when it comes to the identity of the chemical substance for Accession Number XXX88, the Agency "found that the requirements for confidential treatment . . . are not met." [*Id.* at p. 4]. Then, in starting a new 30-day clock, the EPA reminded Burgess of its ability to "obtain judicial review . . . to restrain disclosure of information determined by [the] EPA not to be entitled to confidential treatment." [*Id.* at pp. 4–5].

### D.    Continuous Confidential Treatment

For CDR notices, the submissions that must be made every four years, 40 C.F.R. § 711.20, Burgess clearly filed one in 2020, and the EPA responded to it in 2023. [Doc. 1, ¶ 58]; [Doc. 1-9, pp. 2–5]. Burgess also alleges that it filed the required CDR notice in 2024 "and included a CBI claim and associated substantiation for the chemical substance." [Doc. 1, ¶ 63]. A little quicker this time around, the EPA issued Burgess a letter dated April 24, 2025, "whereby [the] EPA determined that the identity of the chemical substance [for Accession Number XXX88] was not entitled to confidential treatment."

26

[Doc. 1-10, p. 4]. The only reason the EPA gave for its denial of confidential treatment regarding Burgess's 2024 CDR notice was because the Agency "previously denied" confidentiality for Burgess's 2020 CDR notice. [*Id.* at p. 5]. In addition to its usual 30-day reminder for commencing a judicial action under 15 U.S.C. § 2613(g)(2)(D)(i) "to obtain judicial review of any adverse determination and to restrain disclosure of information found not entitled to confidential treatment," the EPA noted that Burgess "may have stated that the information is protected as a trade secret." [*Id.* at pp. 3–4, 6]. "If [the Agency] find[s] the information qualifies as CBI, [it] will not address the [asserted] trade secret [protection]. However, if the information does not qualify as CBI, [the Agency] will review the merits of the trade secret [assertion]." [*Id.* at pp. 3, 6].

Despite the EPA ultimately denying Burgess's CBI claim for the identity of the chemical substance for Accession Number XXX88, and the EPA telling Burgess over and over of its intent to disclose the identity of that substance, the EPA's updates to the TSCA Inventory after the 2016, 2020, and 2024 CDR notice periods "continued to maintain the identity of the chemical substance on the confidential portion of the TSCA Inventory." [Doc. 1, ¶¶ 60–61]. Also, despite the EPA's denial, it seems—considering what's been filed on the record thus far and what the Court can consider for the EPA's motion to dismiss—that the EPA is mum on any assessment regarding the merits of Burgess's potential assertion that the identity of its chemical substance is a trade secret. [Doc. 1-10, pp. 3, 6]; *see also* [Doc. 1, ¶¶ 69 (citing 5 U.S.C. § 552(b); and 15 U.S.C. §

2613(a)); 77 (citing *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1288 (D.C. Cir. 1983) (defining a trade secret as "a secret, commercially valuable plan, formula, process or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either renovation or substantial effort"); and *Appleton v. FDA*, 451 F. Supp. 2d 129, 142 (D.D.C. 2006) (holding, information on the manufacturing process and specifications for a drug were trade secrets))]. On June 5, 2025, Burgess received the EPA's letter dated April 24, 2025, and since then, Burgess claims that it's "been in communication with the EPA . . . in an attempt to resolve this issue and avoid judicial review, while protecting its highly confidential information from release to the public." [Doc. 1, ¶ 64]; [Doc. 1-11, p. 3].

### E.    Burgess's APA Claim

Relying on the TSCA, Burgess states in its complaint that the EPA "is required to review and either uphold or deny any claim submitted" pursuant to a CDR notice "within 90 days." [Doc. 1, ¶ 67 (citing 15 U.S.C. § 2613(g)(1)(A))]. For Burgess's CDR notice from 2016, the EPA responded to it "nearly four years" later—on April 6, 2020. [*Id.* at ¶ 50]. Then, for Burgess's 2020 CDR notice, the EPA didn't deny Burgess's CBI claim "for nearly three years." [*Id.* at ¶ 67]. To a great extent, Burgess alleges that the EPA had "apparently accept[ed] Burgess's argument that [the identity of the chemical substance for Accession Number XXX88] was deserving of CBI treatment" even though Burgess failed to comply with the Active/Inactive Rule because the Agency "continued

28

to treat" the substance as confidential for nearly five years despite telling Burgess that it intended to make the chemical substance known to the public. [*Id.* at ¶ 68].

Enacted in 1946, the APA is "a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." *U.S. v. Morton Salt Co.*, 338 U.S. 632, 644 (1950). The APA provides the default framework for judicial review of final agency actions, *see* 5 U.S.C. §§ 701–706, and it empowers federal courts to ensure that agencies act within the bounds of their statutory authority and engage in a process of reasoned decision-making. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391–96 (2024) (explaining, "the traditional conception of the judicial function" as adopted in the APA). The APA instructs reviewing courts to "hold unlawful and set aside" agency actions, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). By all accounts, it seems to the Court that the EPA's responses to Burgess's 2016 and 2020 CDR notices that took *years* to deliver occurred well outside the statutorily established 90 days so that the EPA's decisions were not "in accordance with law." *Id.*; 15 U.S.C. § 2613(g)(1)(A).

Although the arbitrary and capricious standard is "exceedingly deferential," the very existence of the APA itself means agency decisions aren't blindly confirmed with a gold seal of approval. *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008). A court, though, is not authorized to substitute its judgment over an agency's if the

29

agency's conclusions are rational. *Id.* In reviewing an agency's decision, a court must conduct a "thorough, probing, in-depth review" of the agency's reasoning—often referred to as the "hard look" doctrine. *See Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415 (1971). An agency's action is arbitrary and capricious if it:

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). An agency must articulate a "rational connection between the facts found and the choice made" in the administrative record. *Id.*

The EPA tells the Court that all Burgess is trying to do from its complaint is challenge the EPA's denial of confidential treatment regarding the 2020 CDR notice. [Doc. 16-1, p. 3]. Not so, says Burgess. Burgess counters with its argument that it's *not* challenging the EPA's determination as to Burgess's 2020 CDR notice. [Doc. 20, p. 8]. Rather, Burgess claims that its issue lies in how the EPA denied its claim for confidential treatment with respect to the chemical substance for Accession Number XXX88 in Burgess's 2024 CDR notice. [*Id.* at pp. 8–9]. Again, the *only* reason the EPA gave for its denial of confidential treatment regarding Burgess's 2024 CDR notice was because the Agency "previously denied" confidentiality for Burgess's 2020 CDR notice. [Doc. 1-10, p. 5].

In support of its APA claim, Burgess clings to the EPA's statements on the EPA's website regarding how "*each* CBI claim will be adjudicated on its own merits based on the facts that exist at the time the claim is made[.]" [Doc. 20, p. 10]. The EPA's website states:

> While [the] EPA will consider prior confidentiality determinations *as one factor* in making a determination under [the] TSCA, [the] EPA makes a determination on the validity of *each* CBI claim *in the context of the submission in which it is received*.

*See* EPA Review and Determination of CBI Claims Under TSCA, EPA Considerations for CBI Determinations, accessible at https://www.epa.gov/tsca-cbi/epa-review-and-determination-cbi-claims-under-tsca (emphasis added). Given the singular reason provided by the EPA in its letter dated April 24, 2025, and the fact that the EPA supplied no additional rationale or reasoning to support its denial other than the quick lookback to its decision on Burgess's 2020 CDR notice, the Court easily denies dismissal of Burgess's APA claim at this stage on such a limited record.

Burgess argues that "[the] EPA is clear that every CBI claim should be determined on its merits, not solely on the basis of a prior decision." [Doc. 20, p. 12]. "In fact," pointing once more to the EPA's website, Burgess contends that the EPA "is expected to consider 'each of the following' when making a CBI determination: (1) a business's claim and substantiation; (2) the provisions of TSCA and applicable regulations; (3) any [previously issued] determinations which are pertinent; and (4) other materials as appropriate." [*Id.* (citing EPA Review and Determination of CBI

31

Claims Under TSCA, EPA Considerations for CBI Determinations, accessible at

https://www.epa.gov/tsca-cbi/epa-review-and-determination-cbi-claims-under-tsca

(emphasis added))]. Considering how the EPA denied Burgess's claim for confidential

treatment with respect to the chemical substance for Accession Number XXX88 in

Burgess's 2024 CDR notice, it's difficult to say that's a review on the merits. [*Id.* at p. 13]

Until the Court can take a "hard look" at the administrative record to determine

whether the EPA has acted in an arbitrary or capricious manner, in an abuse of

discretion, or otherwise not in accordance with law, the EPA's efforts to dismiss

Burgess's APA fail at this early stage. 5 U.S.C. § 706(2)(A); *Volpe*, 401 U.S. at 415. In its

complaint, Burgess alleges that "[n]othing in [15 U.S.C. § 2613] authorizes [the] EPA to

disclose a confidential chemical identity merely because of a mistake made by a

reporting entity." [Doc. 1, ¶ 71]. Thus, given that the EPA's strict adherence to and

unwillingness to budge on an overly technical rule may cement irreparable and

irrevocable devastation to a small family-owned business, the Court **DENIES** the EPA's

dismissal efforts under Rule 12(b)(6). [*Id.* at ¶¶ 77–78]; [Doc. 20, p. 11].

### F.      Conclusion

The Court **DENIES** the EPA's motion to dismiss. [Doc. 16].

**SO ORDERED**, this 30th day of July, 2026.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**