**Make UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| BURGESS PIGMENT COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>*Defendant.* | Civil Action No. 5:25-cv-309-TES |

**BURGESS PIGMENT COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO COMPLETE OR SUPPLEMENT THE ADMINISTRATIVE RECORD AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff Burgess Pigment Company ("Burgess") respectfully submits this reply in support of its Motion to Complete or Supplement the Administrative Record and Memorandum of Law in Support Thereof ("Motion") (Dkt. 32). As noted in its Motion, Burgess seeks to include documents demonstrating EPA's exercise of discretion as to chemical identities for which no Active/Inactive Form A ("Form A") was received: (1) an EPA webpage demonstrating that in 2021, 377 chemicals out of an initial list of 2,812 proposed by EPA ultimately lost their confidential business information ("CBI") status ("2021 Webpage") and (2) compilations of EPA's public releases of information collected in the 2016 and 2020 Chemical Data Reporting ("CDR") cycles ("CDR Compilations").[1] These documents should be included in the Administrative Record ("Record") because they were before EPA when it denied Burgess's late-filed Form A and 2024 CDR CBI

[1] Burgess withdraws its request to include the 2024 CDR information as the compilation was published in April 2026, after EPA issued the decisions being challenged in this case.

claim, and therefore the Administrative Procedure Act's ("APA") "whole record" principle justifies supplementation. Moreover, these documents contradict EPA's claim that it *must* disclose the identity of Burgess's chemical, and therefore including these documents as "extra-record" materials in the Record is appropriate to allow meaningful judicial review.

**ARGUMENT AND CITATION OF AUTHORITIES**

**Burgess Properly Seeks Inclusion of the "Whole Record" Considered by EPA or, in the Alternative, "Extra-Record" Materials to Allow Meaningful Judicial Review.**

In cases brought under the APA, a plaintiff may seek to supplement the record in two ways: (1) to correct the record with materials it believes were before the agency but not included in the record and (2) with "extra-record" materials. *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs.*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("*PEACH*"). EPA's Response disregards the "whole record" principle that underlies APA record review in advocating against including the 2021 Webpage and CDR Compilations. And EPA advocates for a narrower view of exceptions allowing for "extra-record" materials than what is required in the Eleventh Circuit. This Court should reject EPA's arguments and supplement the record as requested.

**I. Supplementation Is Appropriate to Provide the "Whole Record."**

The APA requires review of the "whole record"—including materials both directly and indirectly considered by the agency in reaching its decision. *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Where an agency has not included the "whole record" for the court's consideration, it is appropriate (in fact, necessary) to "complete" the record by adding documents that were before the agency when it made its decision, but that have been left out of the record whether by design or mistake. *Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010) (citing *Nat'l. Res. Def. Council v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). "For a court to supplement the record, the

moving party must rebut the presumption of administrative regularity and show that the documents to be considered were before the agency decisionmaker." *Black Warrior River-Keeper, Inc. v. Env't Prot. Agency*, No. 2:19-cv-00344, 2019 WL 11216182, at *2 (N.D. Ala. Oct. 9, 2019). The moving party "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Id.* (citing *Sara Lee Corp. v. Amer. Bakers Ass'n.*, 252 F.R.D. 31, 34 (D.D.C. 2008)). As described below, Burgess has demonstrated reasonable grounds for supplementing the Record with the 2021 Webpage and the CDR Compilations. Burgess has therefore readily met the standard for supplementation to complete the record.

With respect to the 2021 Webpage, if the list of 2,812 chemicals EPA intended to publish was "before the agency" when it made its decisions on Burgess's 2024 CBI claim and late-submitted Form A, as EPA has conceded by including documents pertaining to that list in the Record, then the list of the 377 chemicals it had already acted on at the time it made those decisions must have been "before the agency" as well. *See Miami Nation of Ind. v. Babbitt*, 979 F. Supp. 771, 777 (N.D. Ind. 1996) (noting that a document "need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record."); *Pub. Emps. For Envt'l Resp. v. EPA*, 2026 U.S. Dist. LEXIS 42572, at *5-6 (D.D.C. Mar. 2, 2026) ("As part of the record, the court may consider 'any document that might have influenced the agency's decision' and not merely those documents the agency expressly relied on in reaching its final determination" (quoting *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975)). If EPA "considered" the list of 2,812 chemicals it *intended* to publicize when responding to Burgess's CBI claims, then it also considered—or should have considered—the list of chemicals it had *actually* acted on for important, relevant context.

With respect to the CDR Compilations,[2] Burgess's CDR submissions reflect that Burgess *claimed* confidentiality for its chemicals; the CDR Compilations—statutorily-required public releases of information about manufacturing, processing, and use of chemical substances—show *what EPA did in response to those CBI claims*. Specifically, EPA continued to treat Burgess's chemicals as confidential, even after ostensibly *rejecting* the company's CBI claims for the 2016 and 2020 reporting cycles. This fact is not "redundant and unnecessary," Dkt. 35 at p. 16, because it is directly relevant to EPA's arguments that it no longer considered Burgess's chemical to be confidential and that it had a "nondiscretionary duty" to disclose the chemical identity. Its actions belie those arguments. At no point, and in no public-facing document, has EPA ever treated Burgess's chemical identity as anything other than confidential. Even if such a "nondiscretionary duty" existed following the Form A submission deadline, Dkt. 16 at p. 17, EPA's duty to review each CBI claim on its own merit has since supplanted that duty. *See* Dkt. 36 at p. 31 (citing EPA Review and Determination of CBI Claims Under TSCA, EPA Considerations for CBI Determinations, accessible at https://www.epa.gov/tsca-cbi/epa-review-anddetermination-cbi-claims-under-tsca). Moreover, if Burgess's 2016 and 2020 CDR submissions were "before the agency," then the public-facing report regarding the submissions were, too.

Only with the 2021 Webpage and the CDR Compilations in the Record will the Court have the "whole record" on which to evaluate EPA's decision-making.

## II. Supplementing the Record with the 2021 Webpage and CDR Compilations Will Allow Meaningful Judicial Review.

For the reasons specified above, both the 2021 Webpage and the CDR Compilations should

[2] Burgess does not need the Court to consider a "lengthy compilation of all the CDR submissions from hundreds of different companies concerning unrelated chemicals" for each reporting cycle, as EPA argues. Dkt. 35 at p. 16. An excerpt from each cycle showing that, in its official public report, EPA continued to use the generic accession number for Burgess's chemical rather than the specific chemical identity would suffice for completing the record.

be included in the Record to ensure the "whole record" is before the Court. Alternatively, the Court should grant Burgess's request to supplement the record with the 2021 Webpage and the CDR Compilations as "extra-record" materials to allow for meaningful judicial review.

### A. Supplementation With "Extra-Record" Materials Is Allowed Even Without a Showing of Bad Faith or Improper Behavior by EPA.

EPA's Response suggests that the Eleventh Circuit allows supplementation with "extra-record" materials only where there has been a "strong showing of bad faith or improper behavior by the agency." Dkt. 35 at pp. 8, 13 (citing to *Ala.-Tombigbee Rivers Coal. v. Kempthorne,* 477 F.3d 1250, 1262 (11th Cir. 2007)). That is not the settled law in this Circuit. In *PEACH*, the Eleventh Circuit recognized three additional exceptions allowing supplementation with "extra-record" materials: where "an agency's failure to explain its action effectively frustrates judicial review," where "it appears that the agency relied on materials not included in the record," and where "technical terms or complex subjects need to be explained." 87 F.3d at 1247 n.1. *PEACH* has not been overruled by the Eleventh Circuit: it remains good law, and the other noted exceptions have been cited by and in the Eleventh Circuit. *See Sierra Club v. Leavitt*, 488 F.3d 904, 914 n.16 (11th Cir. 2007) (noting, in a decision six months ***after*** *Alabama–Tombigbee*, that Sierra Club could request the district court on remand to consider certain documents "as extra-record material necessary to determine whether the EPA considered all relevant factors in making its decision") (citations omitted)); *cf. Nat'l. Min. Ass'n. v. Sec'y U.S. Dep't of Labor*, 812 F.3d 843, 845 (11th Cir. 2016) ("We have acknowledged that various factors could be considered in determining the propriety of reviewing extra-record material on review of an agency rule . . . in practice, however, we generally have focused pointedly on whether the petitioners have made a strong showing of bad faith or improper behavior by the agency.").

District courts in this Circuit have recognized and applied the exceptions noted in

*PEACH.* In *Black Warrior River-Keeper, Inc.,* the court permitted supplementation with extra-record materials (scientific studies) because "the existing record is insufficient to permit meaningful review because it is unclear if the EPA considered all of the factors relevant to its final decision." 2019 WL 11216182, at *3-4. Citing *PEACH*, the court held that "federal courts have recognized various exceptions that might properly allow a record to be expanded on judicial review." *Id.* (also citing *Fund for Animals v. Williams*, 391 F. Supp.2d 191, 197-98 (D.D.C. 2005)); *see also Ga. Aquarium, Inc. v. Pritzker*, 134 F. Supp. 3d 1374, 1378 (N.D. Ga. 2014) (observing that the Eleventh Circuit has "noted exceptions recognized by other circuits," pointing to the four exceptions outlined in *PEACH* and four "'accepted exceptions' permitting supplementation" from the D.C. Circuit). EPA's citations to three Florida district court cases holding that a strong showing of bad faith or improper behavior is required to supplement with "extra-record" materials are not dispositive—if anything, they simply stand for the case-specific application of record review caselaw.

For the reasons described in II.B., *infra*, EPA's 2021 Webpage and the CDR Compilations readily fit into any or all the three remaining exceptions described in *PEACH.*

### B. The 2021 Webpage and CDR Compilations Should Be Added to the Record as "Extra-Record" Materials.

Without the 2021 Webpage and the CDR Compilations, "the existing record [would be] insufficient to permit meaningful review because it [would be] unclear if the EPA considered all of the factors relevant to its final decision." *Black Warrior River-Keeper, Inc.*, 2019 WL 11216182, at *3-4. Similar to *Black Warrior*, in *Mobile Baykeeper v. U.S. Army Corps of Engineers*, the court allowed supplementation of the administrative record to include a map of water intakes that was a "critical piece of evidence that the Corps failed to consider" because excluding it "would impede meaningful judicial review." Civil Action No. 14-0032-WS-M, 2014 WL 2569124, at *1, *3, (S.D.

Ala. June 9, 2014). *See also Leavitt*, 488 F.3d at 914 n.16.

As noted in Burgess's Motion and EPA's Response, the Record already contains EPA's announcement that it "expected" 2,812 chemicals to "lose their CBI status and move to the public portion of the TSCA Inventory." AR 12. These 2,812 chemicals were included in EPA's announcement for the same defect as Burgess's chemical (EPA had not received a Form A claiming CBI treatment for those chemicals) or for another defect. Dkt. 35 at p. 11. EPA ultimately moved 377 of the 2,812 chemicals to the public Inventory in 2021. *See* https://www.epa.gov/chemicals-under-tsca/now-available-updates-confidential-status-chemicals-tsca-inventory (noting that the chemical identities of the 377 chemicals "were reported as non-confidential by one or more manufacturers during the 2012, 2016, and/or 2020 CDR reporting periods"). Accordingly, as EPA acknowledges, EPA chose to release those 377 chemicals because they had a different defect than Burgess's chemical: they were reported as non-confidential by one or more manufacturers in prior CDR submissions. *See* Dkt. 35 at p. 11. The 2021 Webpage therefore demonstrates that EPA exercised discretion in deciding which chemicals from the list of 2,812 to release.

EPA concedes that its "basis for moving these 377 chemicals to the public TSCA inventory is *not at all* based on the failure to assert a claim in a Notice of Activity, as in Burgess's case." Dkt. 35 at p. 12 (emphasis added). That is exactly the point. Burgess seeks to include the 2021 Webpage because it demonstrates that EPA exercised discretion in moving a *subset* of the 2,812 chemicals initially slated for release to the public Inventory, which means EPA *chose* to not move chemicals for which no Form A was filed. Put simply, EPA claims that it has a "nondiscretionary duty" to make public the chemical identities of any chemicals that suffer from the same filing defect as Burgess's chemical. Dkt. 16 at p. 17 ("EPA is under a nondiscretionary duty to move the

chemical substance to the nonconfidential portion of the [Inventory].").[3] Yet this webpage proves that EPA has, in fact, exercised substantial discretion in deciding *whether, how, why, and when* to move chemicals for which no Form A was filed. As EPA has conceded, EPA looked at *other criteria* beyond just the filing error at issue when deciding to make other chemicals public. Dkt. 35 at p. 12.[4] A record that excludes the 2021 Webpage demonstrating that EPA has exercised significant discretion regarding the release of chemicals for which no Form A was submitted would limit the Court's ability to meaningfully review Burgess's claims.

The CDR Compilations similarly demonstrate that EPA exercised significant discretion in determining whether to release the identities of chemical substances for which no Form A was submitted. EPA released data from the 2016 and 2020 CDR submissions on May 29, 2020, and May 12, 2022, respectively, well after the deadline for submitting Form As and contemporaneous with (for the 2016 CDR data) or well after (for the 2020 CDR data) EPA identified the list of chemical substances for which no Form A was received. *See Pollution Prevention and Toxic News Stories*, U.S. EPA, "May 29, 2020: EPA Releases Updated 2016 Chemical Data Reporting Rule Data" and "May 12, 2022: EPA Publishes 2020 Chemical Data Reporting Information,"

---

[3] Moreover, EPA's own Response belies their claim of mandatory duty. EPA states that it published the list of 2,812 substances because it "intended for companies to review the 2,812 chemical list when deciding whether to make the effort to assert a claim in spite of the fact that EPA expected to disclose the substance." Dkt. 35 at pp. 10-11. If EPA had a mandatory duty to disclose all substances for which no Form A claiming CBI was filed, why would it give companies a new opportunity to assert a claim?

[4] Burgess does not assert that EPA has "committed" to "*only*" publishing these 377 chemicals. *See* Dkt. 35 at p. 12. It does not need to. The fact that EPA published some, but not all the 2,812 chemicals, no matter the reason given or the number of chemical identities released *fewer than 2,812* proves that EPA's duty to disclose all chemicals with Burgess's same filing defect is not mandatory. In fact, on August 16, 2023, and May 23, 2024, EPA released additional chemical identities to the public Inventory because they were "identified as being no longer eligible for the confidential TSCA Inventory consistent with section 8(b) and as a result of the TSCA Inventory Notification (Active/Inactive) Requirements Rule reporting." https://www.epa.gov/tsca-cbi/updates-confidential-status-chemicals-tsca-inventory.

*https://www.epa.gov/chemicals-under-tsca/pollution-prevention-and-toxics-news-stories*. Despite its arguments that it no longer considered Burgess's chemical to be confidential and that it had a nondiscretionary duty to disclose the chemical identity, EPA chose to continue to refer to Burgess's chemical by its generic accession number when it released the 2016 and 2020 CDR compilations. Including the CDR Compilations demonstrates how EPA *actually treated* Burgess's chemical in the years after the agency determined that no Form A had been submitted. This information is essential for the Court's meaningful review in this case.

Burgess does not seek to include these documents based on a "background information" exception, as EPA suggests. Dkt. 35 at p. 14. Rather, failure to include these documents in the Record would "effectively frustrate judicial review" (one of the exceptions recognized in *PEACH* and subsequent cases) by only telling half the story—only what EPA stated it *intended* to do, and not what it *ultimately did*. EPA has claimed in this case that it has a *mandatory* duty to release the identity of any chemical for which it did not receive a Form A claiming CBI by the appointed deadline. Whether the actions EPA has *actually taken* bear out that claim is crucial to the Court's review of this case. Moreover, these documents are necessary for determining "if the agency examined all relevant factors" (another recognized exception) in reaching its decision. EPA asserted that its *only* reason for denying the confidential treatment request in Burgess's 2024 CDR notice was the agency's determination that a prior CDR notice was not entitled to confidential treatment. Again, the agency's *actual treatment* of the chemical as confidential or public is a highly "relevant factor" to whether EPA's decision complied with the law, and the Court is entitled to determine if the agency properly considered it. *See Sierra Club v. Martin*, 992 F. Supp. 1448, 1466 (N.D. Ga. 1998) ("It will often be impossible … for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what

matters the agency *should have considered but did not*. The court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters." (emphasis added)), *overturned on other grounds by Sierra Club v. Martin*, 168 F.3d 1 (11th Cir. 1999).

EPA's only reason for denying Burgess's 2024 CBI claim was that it had *previously* denied its 2020 CBI claim. But EPA's actions in nevertheless keeping the chemical identity confidential despite the 2020 denial and the fact that it has never publicly disclosed Burgess's chemical identity are undoubtedly relevant factors that EPA was required to considered when EPA decided Burgess's 2024 CBI claim and rejected its late-filed Form A. As such, both categories of documents properly belong in the Record for the Court's review.

## CONCLUSION

For the reasons stated above, the Court should direct EPA to include the requested documents in the Record.

Respectfully submitted this 13th day of August 2026.

/s/ *Meaghan G. Boyd*
Meaghan G. Boyd
Georgia Bar No. 142521
meaghan.boyd@alston.com
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street Atlanta,
GA 30309
Tel: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Plaintiff*
*Burgess Pigment Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2026, I electronically filed the foregoing with the Court by using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

*/s/ Meaghan Boyd*
Meaghan Boyd