**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **BURGESS PIGMENT COMPANY,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br><br>*Defendant.* | **CIVIL ACTION NO. 5:25-cv-00309-TES** |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPLETE OR SUPPLEMENT THE ADMINISTRATIVE RECORD**

Burgess Pigment Company ("Burgess") brought this lawsuit under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, to stop the United States Environmental Protection Agency's (the "EPA" or the "Agency") intended publication of Burgess's confidential business information ("CBI") under the Toxic Substances Control Act ("TSCA"). [Doc. 32, p. 2]. For a more detailed account of the goings on in this case, the Court directs its reader to its order from July 30, 2026, denying the EPA's motion to dismiss. *Burgess Pigment Co. v. EPA*, No. 5:25-cv-00309-TES, 2026 WL 2200221 (M.D. Ga. July 30, 2026) (citations omitted); [Doc. 16], *in connection with* [Doc. 36].

**BACKGROUND**

Under the 2016 amendments to the TSCA, Congress forced the EPA to promulgate a rule aimed at getting an up-to-date list of each chemical substance

manufactured and used in United States commerce. *Burgess Pigment Co.*, 2026 WL 2200221, at *2 (citations omitted). Through what's known as the "Active/Inactive Rule," the EPA sought to accomplish the amendments' goals by implementing a "retrospective electronic notification" system for certain chemical substances that were manufactured by companies during a 10-year "lookback period" that ended on June 21, 2016. *Id.* (citations omitted). Once the Active/Inactive Rule became effective, the EPA required "any manufacturer or processor" of certain chemical substances to submit a notice that the manufacturer or processor "intended to maintain a confidentiality claim for the substance's specific identity." *Id.* (citations omitted). Simply enough, if the EPA received a notice for a particular chemical substance, then the amendments required the EPA to designate that substance as "Active." *Id.* (citations omitted). If, on the other hand, no notice was received for a particular chemical substance, then the EPA is statutorily required to designate that substance as "Inactive." *Id.* (citations omitted).

Burgess has long-since admitted its inadvertent "paperwork error" in not complying with the Active/Inactive Rule. [Doc. 32, p. 2]; *see also* [Doc. 1, ¶ 49 (Burgess's allegation that it "inadvertently did not timely submit a request for its CBI claim to be maintained pursuant to 40 [C.F.R.] § 710.37 following the [2016 amendments to the TSCA] because it was unaware of the requirement at the time.")]. Yet still, after years of back-and-forth communication between Burgess and the EPA, extensive efforts (by Burgess) to remedy its error, and Burgess's repeated claims that publication of its CBI

will effectively destroy the company, the EPA remains adamant that it's statutorily required to publicly disclose Burgess's CBI—potential destruction notwithstanding. *See generally Burgess Pigment Co.*, 2026 WL 2200221.

Substantively, Burgess states that its APA claim seeks review of the EPA's response from April 24, 2025, to Burgess's 2024 Chemical Data Report ("CDR"), in which Burgess asserted CBI for a chemical it uses in its operations. [Doc. 35, p. 3 (citing [Doc. 20, p. 8])]; *see e.g.*, [Doc. 1-10]. Put simply, Burgess, relying on the APA, hopes to convince the Court that the EPA's decision with respect to its CBI should be held unlawful in that it is "arbitrary, capricious, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Procedurally speaking, as stated above, the EPA previously moved to dismiss Burgess's complaint, but the Court denied that effort. [Doc. 1]; [Doc. 16]; [Doc. 36]. Although the Court announced that ruling from the bench, it also informed the parties that a written order would be forthcoming. [Doc. 22]; *see* [Doc. 36]. During that time, the EPA filed its answer to Burgess's complaint. [Doc. 1]; [Doc. 24].

## DISCUSSION

Now, to the motion before the Court—Burgess's motion to complete or supplement the administrative record. [Doc. 32]. When it comes to judicial review of agency decisions and determinizing whether they are "arbitrary, capricious, or otherwise not in accordance with the law," courts "apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record *the agency* presents

to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (internal citation omitted) (emphasis added). Here, that standard—sort of a performance review of agency action—tasks the Court with determining whether the EPA's "action, findings, and conclusions" are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Occidental Petroleum Corp. v. S.E.C.*, 873 F.2d 325, 337–38 (D.C. Cir. 1989).

In line with its obligations, the EPA also—during the pendency of Court's forthcoming order on the EPA's motion to dismiss—filed the administrative record, but later, the EPA added "three additional documents and a different version of one document previously [filed]." *See, e.g.*, [Doc. 27]; [Doc. 31]; [Doc. 35, p. 3]. Now, via the motion before the Court, Burgess seeks to further "complete or supplement" that record with two additional documents it contends will assist the Court in its § 706(A)(2) determination. [Doc. 32]. In its motion, Burgess urges the Court to order the EPA, or permit Burgess itself, to add the following to the certified record or to consider the following under one of the exceptions to the scope of review under the APA. [*Id.* at pp. 1–2]; [Doc. 37, pp. 5–6, 9–10]. Burgess wants the Court to review:

> (1) an EPA webpage from 2021 showing that 377 out of an initial 2,812 chemicals lost their CBI status; and
>
> (2) compilations of the EPA's public releases of information collected in the 2016 and 2020 CDR reporting cycles.

[Doc. 32, pp. 1–2]; [Doc. 37, p. 1 n.1]. Burgess says these records are directly relevant to

its claims that the EPA's intended decision to publish Burgess's CBI is arbitrary and capricious. [Doc. 32, p. 1]. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Burgess's motion.

Easily enough, the parties agree that it's "a bedrock principle that judicial review of agency action under the APA is ordinarily limited to the administrative record." [Doc. 32, p. 4 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973))]; [Doc. 35, p. 4 (first quoting *Fla. Power & Light Co.*, 470 U.S. at 744; and then quoting *Camp*, 411 U.S. at 142)]. "In applying that standard, the focal point for judicial review should be *the administrative record* already *in existence* [for a particular agency decision], not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142 (emphasis added). The parties, however, find friction over whether "the administrative record must be 'the whole record' that was actually before the agency," as opposed to a carefully, agency-culled record "compiled to defend the final result in subsequent litigation." [Doc. 32, p. 4 (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971))]; *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (discussing, the "whole" administrative record includes "all documents and materials directly or indirectly *considered by* agency [decisionmakers] and includes evidence contrary to the agency's position") (emphasis altered). In short, they disagree as to *what* the "whole record" consists of since the "whole" administrative record is not (always) necessarily the documents complied and submitted by a particular agency. *Thompson*, 885 F.2d at 555.

To be sure, the Supreme Court, in *Citizens to Preserve Overton Park v. Volpe*, stated "[t]hat review is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision." 401 U.S. at 420. The D.C. Circuit, from which many of these agency decisions are born, says that "[p]rivate parties and reviewing courts alike have a strong interest in fully knowing the basis and circumstances of an agency's decision. The process by which the decision has been reached is often mysterious enough without the agency's maintaining unnecessary secrecy." *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975). Agencies "must produce an administrative record that delineates the path by which it *reached its decision*." *Occidental Petroleum Corp.*, 873 F.2d at 338 (emphasis added).

"Moreover," Burgess contends, "a document 'need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record" and that courts ". . . may consider 'any document that might have influenced the agency's decision' and not merely those [that] the agency expressly relied on in reaching its final determination." [Doc. 32, p. 5 (first quoting Memo. Op., *Pub. Emps. for Env't Resp. v. EPA*, No. 1:24-cv-00445-JEB (D.D.C. Mar. 2, 2026), Dkt. No. 60, p. 4; and then quoting *Mia. Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 777 (N.D. Ind. 1996))]. Based on these guiding standards, Burgess hopes that the Court will supplement the record since background information is necessary for the Court to make

an informed decision. [Doc. 32, p. 5 (citing *Jarita Mesa Livestock Grazing Ass'n v. United States Forest Serv.*, 305 F.R.D. 256, 282 n.7 (D.N.M 2015))].

In support of its position that something more than what the EPA has submitted as the administrative record ought to be, at least, considered by the Court, Burgess cites to *Sierra Club, Inc. v. Leavitt*, where the Eleventh Circuit, in remanding claims to the district court, permitted a plaintiff "to request that the district court supplement the administrative record with [certain] documents or consider them as extra-record material necessary to determine whether the EPA considered all relevant factors in making its decision." 488 F.3d 904, 914 n.16 (11th Cir. 2007) (citing *Inland Empire Pub. Lands Council v. United States Forest Serv.*, 88 F.3d 754, 760 n.5 (9th Cir. 1996) (ruling that a court reviewing agency action may look beyond the administrative record to determine if the agency examined all relevant factors); and *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1428 (6th Cir. 1991) (same)). Put simply, Burgess is of the impression that "whether an agency *directly* considered a document in making its decision is not the governing standard." [Doc. 32, p. 6].

Burgess's position is simple. It argues that although "[t]he certified administrative record submitted by [the] EPA includes documents reflecting the government's intent, plans, or expected course of action," it "omit[s] documents [that] show what actually occurred." [*Id.*]. Exclusion of those materials means that the Court can see the Agency's stated intent but "not the contemporaneous information bearing

on whether that intent was carried out, whether relevant facts changed, or whether the agency's explanation is consistent with the evidence before it." [*Id.*]. Inclusion of the EPA's webpage from 2021 and compilations of the EPA's public releases regarding the 2016 and 2020 CDR reporting cycles "will simply ensure that the Court has the same informational context the [EPA] had when it acted." [*Id.* at p. 7 (citing Memo. Op., *Pub. Emps. for Env't Resp. v. EPA*, No. 1:24-cv-00445-JEB (D.D.C. Mar. 2, 2026), Dkt. No. 60, pp. 5–6)].

To all of this, the EPA concedes that "[i]f an agency did not include materials that were part of its administrative record, whether by design or mistake, then supplementation of the record is appropriate." [Doc. 35, p. 7 (citing *Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010))]. However, the EPA argues that when it comes to overcoming the presumption that the administrative record submitted by an agency is "correct," the burden is on a plaintiff "to provide concrete evidence that the documents [the plaintiff] seeks to add . . . 'were before the actual decisionmakers." [*Id.* (quoting *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008))]. An agency's "submission and certification of [an] administrative record as filed is entitled to a strong presumption of regularity." *Sara Lee Corp.*, 252 F.R.D. at 34. A plaintiff "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." [Doc. 35, p. 7 (quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C.

2006)]. Merely asserting that something was germane or "before" an agency when it reached it decision, is insufficient to supplement an administrative record. *See Sara Lee Corp.*, 252 F.R.D. at 34. That said, the Court, as does the EPA, recognizes that judicial review of an agency's decision has to be "searching and careful" and that a court may not substitute its judgment for that of agency. [Doc. 35, p. 4 (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 420)].

**A. <u>The EPA's Webpage From 2021</u>**

With respect to the EPA's webpage from 2021, Burgess contends that "the administrative record, as compiled by [the] EPA, includes [the] EPA's announcement that 2,812 chemical substances were expected to lose their [CBI] status[,] but it omits the outcome of that announcement"—that "*only* 377 chemicals ultimately lost their CBI status." [*Id.* (emphasis added)]. Without consideration of the EPA's webpage from 2021, Burgess tells the Court that the current administrative record "presents an incomplete and misleading narrative that would lead the Court to believe all 2,812 chemicals lost their confidential status" when "[t]hat is not what happened." [*Id.*].

Not so, says the EPA. The EPA notes how "Burgess says the outcome of that announcement was that 'only' 377 chemicals ultimately lost their CBI status." [Doc. 35, p. 12 (quoting [Doc. 32, p. 7 (emphasis added)])]. To this, the EPA first says, "[w]hile Burgess may wish that the announcement had committed to only these 377 chemicals from the list of 2,812 chemicals being published, the announcement did no such thing.

Second, the EPA says Burgess reads into the announcement an "only" that does not exist. [*Id.*]. According to the EPA, "the announcement pertained to one basis for moving a substance to the public [TSCA] [I]nventory and explained that the 377 chemicals were being published for that specific reason." [*Id.*]. Importantly, as it pertains to Burgess's APA claim, the EPA says that its "basis for moving these 377 chemicals to the public TSCA inventory is not at all based on the failure to [submit the notice as required by the Active/Inactive Rule], as in Burgess's case." [*Id.*]. The list of more than 2,000 chemicals included on the requested webpage "was used by [the] EPA . . . to initially determine whether a chemical claimed in 2020 and 2024 CDR submissions should be denied." [*Id.*]. Therefore, the EPA contends, "there is no reason that [it] would have considered the website publication of the 377 chemicals when evaluating Burgess's 2024 CBI claim." [*Id.* at pp. 12–13].

Well, "[t]hat's exactly the point," Burgess argues. [Doc. 37, p. 7]. Burgess notes how the EPA "concedes that its 'basis for moving these 377 chemicals to the public TSCA [I]nventory is not at all based on the failure to assert [the notice required by the Active/Inactive Rule], as in Burgess's case.'" [*Id.* (quoting [Doc. 35, p. 12])]. Based on that, Burgess contends that the webpage shows how the EPA exercised discretion "in moving a *subset* of the 2,812 chemicals initially slated for release to the public [TSCA] Inventory, which means [the] EPA *chose* to not move chemicals for" the same reason it's refusing to *not* move Burgess's. [*Id.*]. While that may be true in a tangential sense, it

seems, at least to the Court, that inclusion of the outcome for 377 chemicals "documented on a sperate EPA webpage" has little to nothing to do with how the EPA reached its decision for *Burgess's* CBI. Again, an administrative record should only consist of those things "considered by" an agency, and whatever after-the-fact information the EPA published or documented on its website for what it *did* with certain chemicals for *other* manufacturers or processors seems too far removed for what it considered for Burgess. *Thompson*, 885 F.2d at 555. Agencies only have to produce an administrative record that "delineates the path by which it *reached* its decision." *Occidental Petroleum Corp.*, 873 F.2d at 338 (emphasis added). Some post-decision publication on a website for 377 other chemical substances in and of itself doesn't point to how the EPA reached its decision for Burgess.

To that end, the EPA suggests that "Burgess provides no evidence to show that the webpage was considered, directly or indirectly, by [the] EPA in connection with the April 2025 response challenged here." [Doc. 35, p. 10]. The EPA argues that Burgess merely speculates that the webpage would have been considered because other documents "identifying the chemical substances that [the EPA] intended to make public" are in the administrative record. [*Id.* (quoting [Doc. 32, p. 8])]. While it's a very close call, the Court agrees with the EPA.

Considering this, Burgess fails to meet its burden when it comes to supplementing the administrative record with the EPA's webpage from 2021. It's too

attenuated, and Burgess's motion to supplement the administrative record with the requested webpage is **DENIED**.

**B. <u>Compilation of Reporting Cycles</u>**

Second, as for the compilations of the pertinent CDR reporting cycles, Burgess argues that those report on the chemical substance at the center of Burgess's APA claim and demonstrate that—in addition to the fact that the identity of Burgess's chemical remained on the confidential portion of the TSCA Inventory—the EPA "continued to withhold the chemical identity as confidential when making [statutorily required] releases of information about the manufacturing, processing, and use of the chemical substance despite [the] EPA's denials of Burgess's CBI claims." [Doc. 32, p. 9]. To be clear, Burgess's CDR submissions are already a part of the administrative record, but Burgess thinks the Court should consider "the *public releases* compiled by [the] EPA" from the 2016 and 2020 CDR reporting cycles for context as to how the EPA treated Burgess's chemical in practice because they "reflect what [the] EPA actually disclosed to the public [for] Burgess's chemical." [*Id.* (citing *Tauri Grp., v. United States*, 99 Fed. Cl. 475, 480 (2011) (completion involves "documents created during the evaluation process")]; [Doc. 37, p. 1 n.1].

Additionally, Burgess argues that the CDR compilations also demonstrate the EPA's significant exercise of discretion "in determining whether to release the identities of chemical substances for which no [notice] was submitted." [Doc. 37, p. 8]. Burgess

submits that the EPA "released data from the 2016 and 2020 CDR submissions on May 29, 2020, and May 12, 2022, respectively, well after the deadline for submitting [notices under the Active/Inactive Rule] and contemporaneous with (for the 2016 CDR data) or well after (for the 2020 CDR data) [the] EPA identified the list of chemical substances for which no [notice] was received." [*Id.*]. When it comes to Burgess's position that "[d]espite [the EPA's] arguments that [the EPA] no longer considered Burgess's chemical to be confidential and that it had a nondiscretionary duty to disclose the chemical identity, [the] EPA chose to continue to refer to Burgess's chemical by [a particular, secret identifier] when it released the 2016 and 2020 CDR compilations"—*that* finds more traction for supplementing the record for its APA claim. [*Id.* at p. 9]. As Burgess argues, including the CDR compilations for 2016 and 2020 goes directly to how the EPA actually treated Burgess's chemical in the years after the EPA determined that Burgess failed to submit the requisite notice under the Active/Inactive Rule. [*Id.*]. Given Burgess's position that the EPA's only reason for denying Burgess's 2024 CBI claim was that it had previously denied its 2020 CBI claim notwithstanding the EPA's actions that kept Burgess's chemical identity confidential and off the publicly disclosed portion of the TSCA Inventory is undoubtedly relevant to what that EPA was required to consider when EPA decided Burgess's 2024 CBI claim. Thus, Burgess's motion to supplement the administrative record with the 2016 and 2020 CDR compilations is **GRANTED**, and the EPA is **ORDERED** to file its compilations of public releases collected in the 2016 and

2020 CDR reporting cycles by ***October 28, 2026***.

## CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Burgess's motion to complete or supplement the record as set out above. If, upon consideration of these materials in ruling on the parties' forthcoming cross-motions for summary judgment, the Court finds that their inclusion into the administrative record toes the line of conducting a de novo determination, it assures the EPA that it's aware of its obligation to set them aside and rule without them. *Camp*, 411 U.S. at 141. The Court is more than capable of separating the wheat from the chaff in this instance and, if need be, explain why consideration of the 2016 and 2020 CDR compilations does not transform this case from a review of the administrative record into one of de novo review.

**SO ORDERED**, this 14th day of October, 2026.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**